# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE
## IN AND FOR NEW CASTLE COUNTY

STATE OF DELAWARE,      )
                              )
          v.             )       ID. No. 1410014987
                              )
LAMAR MASSAS.        )
                              )

## <u>ORDER</u>

On this 24th day of April, 2015, **IT IS ORDERED** as follows:  Defendant's

Motion to Suppress is **DENIED**.

Daniel B. McBride, Esq., Deputy Attorney General, Delaware Department of
Justice, Wilmington, Delaware. Attorney for State of Delaware.

Kathryn Van Amerongen, Esq., Assistant Public Defender, Public Defender's
Office, Wilmington, Delaware.  Attorney for Defendant.

**Scott, J.**

## Introduction

Before the Court is Defendant Lamar Massas' ("Defendant") Motion to Suppress, brought by counsel. Defendant argues that his Fourth Amendment right against unreasonable search and seizure was violated as a result of an improper pre-textual stop that exceeded the scope of a traffic stop. The Court has reviewed the parties' submissions, held a suppression hearing and reviewed the parties' supplemental submissions on the issue of standing. For the following reasons, the Defendant's Motion to Suppress is **DENIED.**

## Findings of Fact

On October 21, 2014, Officer Dirocco of the Wilmington Police Department was on patrol when he observed a teal Nissan Altima fail to stop completely at a stop sign at the intersection of West 29th Street and Tatnall Street, after which he activated his emergency equipment and stopped the vehicle.

At the suppression hearing, Officer Dirocco noted that he had seen this same vehicle earlier that day around noon, but did not call it in because the vehicle was parked and unoccupied. Officer Dirocco took notice of the vehicle because of an officer safety alert that had been distributed by Wilmington Detectives that morning, and provided a description of the vehicle and its license plate number. The officer safety alert also noted that detectives wanted to speak with occupants of interest associated with that vehicle, Tasia Richmond ("Richmond") and Lamar Massas, regarding them being potential witnesses to a homicide, and instructed

officers to call Detective Fox should they encounter the vehicle. Officer Dirocco also recalled an earlier officer safety alert sent in September for that same vehicle, which provided a description of the vehicle and its license plate number, and stated that the vehicle had been seen fleeing several recent shooting scenes.

Officer Dirocco testified that, while he was aware that Richmond and Defendant were occupants of interest associated with that vehicle, he was not aware of the identities of the vehicle's occupants when he initially pulled the vehicle over for the moving violation. Due to the officer safety alerts on that vehicle, which Officer Dirocco was aware of at the time of the stop, he immediately radioed for additional units when he called in the traffic stop at 1:51p.m. Officer Dirocco approached the driver's side of the vehicle and asked the driver – subsequently identified as Richmond – for her license, registration and insurance. Richmond immediately produced the requested information. At that time, Officer Dirocco also asked Richmond a few standard questions asked during traffic stops such as, where are you were going to and coming from. Officer Dirocco testified that Richmond appeared extremely nervous in response to routine questions that would not trigger such unusual nervousness, to the extent that it made Officer Dirocco nervous. He testified that he observed Richmond's hands shaking or trembling, and that he could hear in Richmond's voice her breathing very heavily and fast as she answered his questions.

3

Officers Cannon and Tiberi of the Wilmington Police Department arrived at the scene to assist at 1:53p.m. At that time, Officer Cannon approached the passenger side of the vehicle and made contact with Defendant, who was in the passenger seat. In response to Richmond's unusually nervous demeanor, Officer Dirocco asked Richmond to step out of the vehicle. Officer Cannon then observed Defendant suddenly become extremely nervous and jittery when Richmond was removed from the vehicle. For that reason, Officer Cannon asked Defendant to step out of the vehicle as well.

Both Richmond and Defendant were cooperative and complied with the officers' instruction to sit on the curb while Officer Dirocco called Det. Fox. Officer Dirocco spoke with Det. Fox, who instructed him to transport Richmond and Defendant to the Wilmington Police Department. Richmond and Defendant were then patted down for weapons and placed in custody, pursuant to department procedure when transporting persons in a marked patrol vehicle. As they were being moved to the patrol vehicles for transport, Officer Tiberi overheard Defendant say to Richmond, "yo, make sure the vehicle is locked."

In response to Defendant's statement to Richmond, Officer Tiberi went back to the vehicle. Upon peering through the rear driver's side window, Officer Tiberi saw in plain view a handgun sticking out from underneath the back of the driver's seat. Officer Dirocco testified that, while the rear window was tinted, he could still see through it and into the vehicle when he was at the window.

4

Richmond and Defendant were placed in separate patrol vehicles to be transported to Wilmington Police Department. The call detail report, which was submitted at the hearing and notes the timing of radio transmissions related to the stop, shows that one patrol vehicle departed the scene at 2:00p.m. and the other patrol vehicle departed the scene at 2:05p.m. At the hearing, Officer Dirocco could not recalled which vehicle departed first, but testified that he transported Richmond in his vehicle. The call detail report shows that the entire duration of the traffic stop lasted between 9 and 14 minutes.

Officer Dirocco also testified that a routine traffic stop for a moving violation where an e-ticket is issued takes approximately 15 to 20 minutes. He concluded that the duration of the actual stop here was the same duration as, if not shorter than, it would have been had he merely conducted the traffic stop and issued Richmond an e-ticket. Officer Dirocco added that while Richmond was not issued an e-ticket at the scene, she was ultimately charged for the moving violation together with her other charges.

Defendant was subsequently charged with Possession of a Firearm by a Person Prohibited, Possession of Ammunition by a Person Prohibited, Carrying a Concealed Deadly Weapon and Possession of a Stolen Firearm. On January 16, 2015, Defendant filed this Motion to Suppress.

On April 13, 2015, the Court held a suppression hearing on this motion. At the conclusion of the hearing, the Court instructed the parties to submit

supplemental briefing on the issue of whether Defendant, as a passenger in the vehicle, had standing to challenge the stop of the vehicle and discovery of the handgun.

### Parties' Contentions

Defendant contends that the evidence found in the vehicle should be suppressed because it was found in violation of his Fourth Amendment right against unreasonable search and seizure. Defendant argues that the traffic stop was invalid because it was purely pretextual in order for the officer to detain him and search the vehicle. Defendant also argues that, regardless of pretext, his detention was unlawful because exceeded both the reasonable scope and duration permitted under *Terry*.

The State contends that the evidence found in the vehicle should not be suppressed. The State argues that the traffic stop was valid and not pretextual because Officer Dirocco conducted the traffic stop in response to Richmond's failure to stop completely at a stop sign. The State also argues that Defendant's detention as a result of the traffic stop was both reasonable in duration and within the scope permitted under *Terry* because the entire detention lasted approximately ten minutes. Moreover, the State argues that Defendant's detention was within the scope permitted under *Terry* because the handgun was found in plain view on the floor of the vehicle, and not pursuant to a search of the vehicle. In other words, the discovery of the handgun was within the scope of the traffic stop because it was

6

not found as a result of a separate investigation.  Finally, the State argues that Defendant does not have standing to contest the search of the vehicle.

## Discussion

A person only has standing to challenge evidence seized as a result of a violation of one's own constitutional rights.[1]  The petitioner must demonstrate his own "legitimate expectation of privacy in the invaded place" before he may challenge the validity of a search or seizure.[2]  For purposes of protection under the Fourth Amendment, automobiles are treated differently than houses.[3]  A passenger who does not own or exercise control over a vehicle does not possess a reasonable expectation of privacy in the vehicle in which he is traveling.[4]  Therefore, a mere passenger in a vehicle does not have standing to challenge a search.[5]

Defense counsel references only a footnote in *Jarvis v. State*[6] in asserting that, even as a mere passenger, Defendant has standing to challenge the admissibility of the handgun found in the vehicle.  However, defense counsel offers no argument for its application to this case.[7]  Upon its own review, the Court finds *Jarvis* inapplicable to this case.  Importantly in *Jarvis*, the Delaware Supreme Court recognized that as the passenger in the vehicle who did not own the vehicle

---

[1] *Mills v. State*, 2006 WL 1027202 (Del. Apr. 17, 2006).
[2] *Wilson v. State*, 812 A.2d 225 (Del. 2002) (citing *Rakas v. Illinois*, 439 U.S. 128 (1978)).
[3] *Rakas*, 439 U.S. 128.
[4] *See Mills*, 2006 WL 1027202; *see Rakas*, 439 U.S. 128.
[5] *Id.*
[6] 600 A.2d 38, n.1 (Del. 1991).
[7] *See* D.I. 14 (Def. Supplemental Briefing on Issue of Standing).

or exercise control over it, Jarvis did not have a reasonable expectation of privacy in the vehicle under *Rakas v. Illinois*, 439 U.S. 128 (1978).[8] The Supreme Court noted only that Jarvis had standing in the narrow context of objecting to the seizure of her person.[9] This Court finds *Jarvis* inapplicable to this case because Defendant here does not seek suppression of evidence found as a result of a search incident to his seizure. Defendant only seeks suppression of a handgun which was found in plain view, and not pursuant to a search, in the vehicle. Thus, even under *Jarvis*, Defendant is not extended a reasonable expectation of privacy in a vehicle that he did not own or exercise control over, or for evidence found in that vehicle in plain view.

Instead, the Court finds the more recent Delaware Supreme Court opinion in *Mills v. State* more appropriate. In *Mills*, the defendant argued that he was illegally detained at the time of the motor vehicle stop and that the fruits of that detention should have been suppressed.[10] The court in *Mills* held that the defendant lacked standing to seek suppression of the fruits discovered as a result of the driver's arrest because the defendant did not own or exercise control over the vehicle, and therefore had no reasonable expectation of privacy in the vehicle's trunk where the evidence was found.[11] Furthermore, the court in *Mills* specifically acknowledged

---

[8] *Jarvis*, 600 A.2d at n.1.
[9] *Id.*
[10] *Mills*, 2006 WL 1027202, at *1.
[11] *Id.*

8

that, while the defendant had "no standing with respect to the stop and search of the vehicle, he [had] standing to object to the circumstances under which his person was seized."[12]

Similarly in this case, the Court finds that while Defendant has standing to object to the circumstances under which his person was seized, Defendant has no standing with respect to the stop of the vehicle and discovery of the handgun in plain view. The vehicle was driven by and registered to Richmond. There is no evidence that Defendant owned the vehicle or exercised control over it. Moreover, the handgun was not found pursuant to a search of the vehicle; it was found by Officer Tiberi in plain view upon looking through the rear driver's side window of the vehicle. Therefore, Defendant, as a passenger in the vehicle, had no reasonable expectation of privacy inside the vehicle where the handgun was found.[4] "Absent other factors that are not present here, any reasonable expectation of privacy in the car belongs to its owner or driver, but not a passenger."[13] Accordingly, Defendant has no standing to suppress evidence obtained from Richmond's vehicle and pursuant to the traffic stop.

---

[12] *Id.* at *2.
[13] *See Id.*

## Conclusion

For the foregoing reasons, Defendant's Motion to Suppress is **DENIED.**

**IT IS SO ORDERED.**

/s/Calvin L. Scott
**Judge Calvin L. Scott, Jr.**